# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK CORP., et al.,

        Plaintiff,

  v.                                    Case No. 05-C-985

TYCO HEALTHCARE RETAIL GROUP,

        Defendant.

**ORDER**

Before me presently are the plaintiff's two Rule 7.4 motions: one seeks to compel discovery [118], while the other seeks a protective order [129]. Also before me is the defendant's Rule 7.4 motion to compel interrogatory responses [125].

**1. Motion to Compel Discovery**

The first motion asserts that plaintiff ("K-C") is entitled to documents that Tyco is withholding on the basis of privilege. K-C argues that Tyco waived any privilege in relying on an advice of counsel defense as to willful infringement, including communications from counsel regarding the validity of the patents in suit. Tyco contends that it has asserted advice of counsel as a defense only as to non-infringement and is therefore not required to disclose communications with counsel concerning the validity of the patents.

In asserting the defense of advice of counsel, Tyco produced a letter from the Fish & Richardson law firm in which the firm advised that Tyco's product did not infringe the patents in suit. K-C argues that production of this letter, as well as the advice of counsel defense more

generally, opens the door to any other attorney-client communications relating not only to infringement but also validity and enforceability. K-C concedes that Tyco may redact any attorney work product that was never communicated to Tyco.

K-C relies largely on *In re EchoStar Commc'ns Corp.,* 448 F.3d 1294 (Fed. Cir. 2006). In particular, it cites that court's conclusion that

> *when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused.* This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.

*Id.* at 1304 (italics added). The italicized portion just quoted would seem to hold that the privilege waiver is not limited to the particular nature of the advice of counsel defense the defendant raises – here, infringement – but instead is broad enough to open the door to attorney-client communications about validity and enforceability as well.

On the other hand, it is not clear that counsel's opinions about validity would necessarily pertain to an opinion of non-infringement. As one court since *Echostar* has noted,

> The purpose of the advice-of-counsel privilege waiver is to allow an inquiry into the infringer's state of mind regarding the infringer's reasonable reliance on its advice of counsel. Non-infringement, invalidity, and unenforceability are separate and independent defenses to infringement. If a defendant has reasonably relied on ultimately erroneous advice of counsel that a patent is invalid, unenforceable, or not infringed, the advice is evidence that the infringement was not willful.

*Autobytel, Inc. v. Dealix Corp.,* 455 F. Supp.2d 569, 575 (E.D. Tex. 2006). Under this approach, the questions of validity and infringement are distinct, and counsel's opinions on validity may be irrelevant to the question of willfulness if the defendant does not claim it relied on advice of counsel

2

on that question.

But having asserted advice of counsel as a defense to a claim of willful infringement, the question at this point is not whether Tyco relied upon advice of counsel on the question of validity, but whether such advice was given. Invalidity, like non-infringement, is a defense to a claim of infringement. If counsel rendered an opinion to Tyco on both defenses, Tyco cannot disclose only the opinion it finds favorable to its position and conceal the unfavorable opinion. *Echostar* explicitly rejects this approach:

> The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense. . . . . However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. . . . . In such a case, the party uses the attorney-client privilege as both a sword and a shield. . . . . To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.

448 F.3d at 1301.

The subject matter of the communications is whether Tyco's products infringe on K-C's patents. Tyco's waiver of the attorney-client privilege extends to all communications regarding this subject matter, including whether K-C's patents are valid and enforceable. Accordingly, K-C's motion is GRANTED: Tyco is ordered to disclose any document or opinion that embodies or discusses a communication between Tyco, or its predecessors, and the Fish & Richardson law firm concerning whether the patents-in-suit are valid, enforceable or infringed, including but not limited to documents already identified as FRTY 0051, 0053, 0055-56, and 0043-44. *EchoStar,* 448 F.3d at 1304.

K-C also objects that Tyco's privilege log improperly claims work product immunity even

3

though it appears many of the documents – those prepared between August 1998 and July 1999 – were not prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). Tyco has not responded to this contention. Thus, Tyco is directed to submit a new privilege log indicating on what basis (if any) it is asserting a work product privilege as to each document prepared between August 1998 and July 1999.

**2. Motion to Compel Answers to Interrogatories**

Tyco moves to compel answers to six interrogatories – numbered 10 through 15 – it served on K-C. Tyco states that the issues were the subject of a meet-and-confer on December 20, 2006, as required by Local Rule 37.1. K-C protests on the grounds of relevance; it also argues that the parties were still in the process of negotiating resolution of these issues when Tyco precipitously filed the instant motion.

As Tyco has argued itself, it is incumbent upon the party from whom discovery is sought to police the issue of relevance in the first instance. Thus, the mere fact that K-C has objected to various questions on relevance grounds is not, in itself, enough to justify a motion to compel. Instead, Tyco must come forward with some basis to conclude that the information sought is relevant in its own right or could lead to other discoverable evidence. Tyco argues that interrogatories 10, 12, and 14 – which seek information about when K-C reduced its inventions to practice as well as when and why K-C marked its products with the '344 patent – are relevant to the issue of damages.[1] Tyco's motion provides little basis for this argument, however, and is all but conclusory on the point. Further, especially as to interrogatories 12 and 14, it appears that the parties were in the process of attempting to narrow the issues to come to a reasonable approach to

---

[1]The interrogatories, and K-C's responses, are found at Exhibit A to the motion to compel.

production. (Flaherty Decl., Ex. 1 at 3.) As to interrogatory 10, however, it is conceivable that the date K-C first began offering the products for sale could be relevant or lead to relevant information. Accordingly, K-C is ordered to supplement its response to that interrogatory.

Tyco asserts that Interrogatory 11, which seeks the dates of conception and reduction to practice of the claims in suit, is highly relevant to validity issues. K-C asserts that it has already answered this interrogatory by providing the inventors' notebooks as well as making the inventors themselves available for deposition. Although the timing of reduction to practice may indeed be relevant to the issue of validity, Tyco has not explained why it is incumbent upon K-C to essentially produce a specific date – ultimately, a quasi-legal conclusion – instead of providing all of the underlying factual evidence that could support a conclusion about the timing.

Tyco asserts that Interrogatory 13 is relevant to an estoppel defense. In particular, it notes that K-C made a representation to a company called Paragon (which Tyco subsequently acquired) to the effect that Paragon did not infringe any of K-C's patents. K-C notes that this agreement was never the subject of any meet-and-confer; it further protests that the inquiry is overly broad and vague, inasmuch as the interrogatory asks K-C to disclose what actions "it" took over an unspecific period of time. Again, it is unclear from Tyco's own motion or from the correspondence between the parties why any information about an agreement with Paragon would be relevant. To the extent it might be, however, it seems clear that much of the issue was not properly discussed between the parties and is thus premature for resolution through a Rule 7.4 motion.

As to Interrogatory 15, K-C has indicated in its correspondence with Tyco that it will supplement its response. (Flaherty Decl., Ex. 1 at 4.) It thus appears, as elsewhere, that any dispute is either unripe or nonexistent.

Accordingly, the motion to compel is GRANTED, to the extent that K-C is directed to answer interrogatory number 10; it is DENIED in all other respects.

**3. K-C's Motion for a Protective Order**

Finally, K-C seeks a protective order, the effect of which would be to hold Tyco to the invalidity contentions it had earlier proffered in an August 9, 2006 response to K-C's interrogatories. K-C asserts that Tyco, through an expert report, has now offered new twists on its invalidity arguments and that these novel positions would require additional *Markman* proceedings because they involve terms whose meanings are disputed. Specifically, Tyco now appears to be arguing that certain claim limitations of the Chappell patent were anticipated by patents issued to Larson and Megison. In K-C's view, Tyco's new invalidity arguments would require construction of the terms "fluid-permeable cover" and "fluid-impermeable baffle."

K-C's motion is based in part on the philosophy promulgated in the rules of the Northern District of California. The governing principle of those rules has recently been paraphrased by a New York district court:

> The philosophy behind those rules is to ensure that parties "crystallize their theories of the case early in the litigation and adhere to these theories once they have been disclosed." *Atmel Corp. v. Information Storage Devices, Inc.,* No. C 95-1987, 1998 WL 775115, at *2 (N.D.Cal. Nov. 5, 1998). In contrast to the liberal policy governing amendment of pleadings, the philosophy underlying amendment of invalidity or infringement contentions is "decidedly conservative" and designed to ensure that litigants do not continue to shift their theories after each claim construction ruling. *Id.*

*Convolve, Inc. v. Compaq Computer Corp.,* 2006 WL 2527773, *4 (S.D.N.Y. 2006).

Although this district has not specifically adopted such rules, the scheduling order controlling this case follows that general approach. In particular, the order contemplates that any

6

disputes about claim terms should be identified early in the litigation. It required that discovery on claim construction be completed by October 1, 2006, and also required the filing, by July 10, 2006, of a joint claim construction statement. (Docket No. 12.) Although the order does not specifically require disclosure of invalidity contentions by any certain date, it follows that if such contentions involve the construction of a claim term then such terms were to be construed as part of the *Markman* process. Indeed, one of the reasons I granted K-C's motion compelling Tyco to answer K-C's interrogatories *prior* to the *Markman* hearing was that, "depending on Tyco's basis for arguing invalidity, additional terms (not presently in dispute) may require *Markman* construction." (Order, Docket No. 59.)

Tyco protests that validity issues may generally arise and be briefed following *Markman* proceedings, a fact this court itself recognized. But that assumes the parties are making invalidity arguments based on the court's resolution of the disputed claim terms. As such, the general rule allowing invalidity arguments to be raised post-*Markman* does not hold true when new invalidity arguments implicate claim terms that should have been identified and argued earlier. The question, then, is whether Tyco's new invalidity arguments would require additional claim construction. Tyco believes they would not. It notes that its expert report simply assumes that the terms mean what they say; it further notes that K-C's statement that it "disagrees" with Tyco's construction of the terms rings hollow given that K-C has thus far not identified any meaningful disagreement about what the terms actually mean.

Although it is difficult to discern, in the context of a Rule 7.4 motion, whether the parties actually disagree about the meaning of the terms in dispute, it is clear at this point that Tyco is not attempting to involve this court in claim construction after the *Markman* proceedings have finished.

7

So long as Tyco is standing on the claim terms as it finds them, I see no basis to preclude it from

using such terms in its arguments for invalidity.  Accordingly, this is not the sort of novel validity

argument that should clearly have been addressed earlier, and there is no indication that Tyco is

attempting to subvert the claim construction process.  The motion for a protective order is therefore

DENIED.

SO ORDERED this 26th  day of January, 2007.


                                                        s/ William C. Griesbach
                                                        William C. Griesbach
                                                        United States District Judge