UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK CORP., et al.,

      Plaintiff,

v.                                                          Case No. 05-C-985

TYCO HEALTHCARE RETAIL GROUP,

      Defendant.

**ORDER**

Discovery disputes have resulted in the filing of some eight discovery motions, several of which are not yet fully briefed. This order addresses three of them.

**1. Motion for Sanctions [150]**

This motion is based on Kimberly-Clark's (K-C) frustration with what it views as Tyco's intransigence and lack of preparedness. A particular sticking point involves a printout, produced by Tyco in discovery, of what was evidently a presentation Tyco's sales people made to Walgreens drug stores. Although K-C evidently views this presentation as a sort of smoking gun, its basis for doing so remains unclear. In any event, the document refers to sanitary napkins having a "multi-density core," and because the core density is of crucial import in this case K-C wants to know more particularly what that phrase meant to Tyco. Its efforts to learn more about the Walgreens presentation have not been particularly fruitful, however. It asserts that Tyco's Rule 30(b)(6) witness, Joe Howard, knew next to nothing about the topic he was designated to speak to. It also asserts that Tyco has failed to adequately explain who created the document in the first place and refuses to acknowledge that the document refers to multi-density core napkins.

In response, Tyco suggests that the dispute is premature and proposes to let Mr. Howard testify again, presumably after undertaking further inquiry into the meaning of the term "multi-density core" and information about the source of the document. K-C objects that these eleventh hour proposals should not be tolerated, but in the context of the massive amount of discovery this case has generated, Tyco's failings do not seem grounds for sanctions. Moreover, the document at issue seems more akin to a marketing presentation than an R&D memorandum whose conclusions might speak more concretely about the actual density of the products at issue. Thus, the relief sought in the proposed order (Flaherty Decl., Ex. 9) will not be granted. Instead, Tyco is directed to make its Rule 30(b)(6) witness available again to meaningfully discuss the Walgreens document and provide, to the extent possible, the information K-C seeks.

Another dispute arises over Tyco's laches defense. K-C suggests that Tyco should be sanctioned for its Rule 30(b)(6) witness' inability to express any meaningful prejudice it suffered as a result of K-C's delay in filing this lawsuit. The witness similarly was unable to explain dates of sale and testify about research and development. Tyco protests that its witnesses should not be required to testify about what essentially are legal conclusions, i.e., how it was prejudiced, for example. Although the topics at issue certainly involve legal conclusions, that is true of nearly every topic open to discovery. It does not require legal conclusions for a corporate designee to explain the facts underlying a claim of laches, and it is not for the deponent to render legal opinions as to laches or any other legal or equitable claim. Because Tyco offers no other explanation for its failure to meaningfully provide discovery on these issues, K-C's requested relief will be granted in part. In particular, Tyco will be prohibited from introducing evidence that it suffered any prejudice from K-C's delay in bringing this lawsuit apart from (1) Tyco's inability to locate records

2

concerning shipments of Tyco's channeled maxis prior to October 1999, and (2) any other prejudice testified to by Donald Sheldon, its 30(b)(6) designee.

Finally, K-C takes issue with Tyco's disclosures about the nature of the napkins it has sold over the years. K-C wants Tyco to cite not just each of the thousands of different channeled products it has sold under various model numbers and names, but rather to identify what K-C calls the "types" or "categories" of such napkins. Otherwise, K-C explains, it will be forced to perform testing on thousands of products rather than being able to meaningfully narrow down the alleged infringing products. Tyco responds that it provided substantial information to K-C about all of its products. It notes that its 30(b)(6) witness could not be expected to recall each permutation of a product or product "type" from memory, which is (in Tyco's view) what K-C expected. Tyco suggests further that K-C could have discussed the issue meaningfully with Mr. Tarby, its 30(b)(6) witness, rather than in the fashion K-C undertook.

This issue seems to be something of an impasse at this stage. Tyco believes its disclosures have allowed K-C substantial amounts of information about its products and a fair shot at discovering the information it seeks. Moreover, it is not necessarily incumbent upon Tyco to package its product information in the particular fashion the plaintiff wants. On the other hand, K-C still appears to be in the dark about a way to categorize or make sense of the thousands of different products Tyco has apparently produced. The filings do not present a basis for sanctions, however, but the relief K-C requests does provide a roadmap. Specifically, K-C wants to hold Tyco to the types of product it has already disclosed and prohibit it from introducing any evidence that those products have changed over time. (Flaherty Decl., Ex. 9.) Although such a ruling would be premature in my view, I am also not inclined to allow Tyco to rest on its own disclosures of

3

apparently thousands of different products and various model numbers. Accordingly, Tyco will be allowed to supplement, within two weeks, the information it has thus far provided about the types or categories of its products. It may choose to do so through another 30(b)(6) deposition limited to that narrow topic, or it may produce such information in any other format acceptable to K-C. If at that time K-C believes Tyco's disclosures are inadequate, the sanction request may be renewed. Given the history of these proceedings and the substantial resources this court has already directed at this case, however, the parties are strongly encouraged to resolve this matter without further court intervention.

**2. Motion to Take Further Rule 30(b)(6) Depositions [147]**

K-C also moves for leave to be able to take a second round of 30(b)(6) depositions. It asserts that its first notices of deposition were geared toward liability discovery, whereas this round is meant for damages discovery. Tyco protests that further discovery would be wasteful and that K-C already had the opportunity to conduct the discovery it needed.

Leave to take further discovery will be granted.[1] Given the voluminous nature of the discovery this case evidently requires, and given the absence of any indication that K-C has been dilatory or abusive in its additional discovery requests, I conclude further discovery will not unduly burden Tyco. Of course some of the information K-C seeks will be either duplicative or irrelevant, but the discovery process comprehends that possibility from the outset.

**3. Motion for Protective Order Against Rule 30(b)(6) Notice [155]**

K-C also moves for a protective order from topic #5 in a notice Tyco served on January 23, 2007. Although the parties were apparently able to work out disputes on all of the other topics

---

[1] I note there is some question about whether leave of the court is even required.

noticed, K-C maintains its objection to topic #5, which seeks "any and all facts concerning the validity of the patents-in-suit." K-C believes this topic is too vague and broad to meaningfully prepare a witness to testify about.

The court agrees. Rule 30(b)(6) requires a party to identify the matters on which examination is requested with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). Tyco's general reference to "the validity of the patents-in-suit" is not specific enough to allow K-C to reasonably prepare a witness to testify. There are numerous grounds on which patents can be found invalid. Presumably, Tyco has several in mind, since it has asserted invalidity as an affirmative defense. Tyco should narrow its request to specific areas that may be relevant. K-C should not have to give its employees a course on patent law in preparation for a Rule 30(b)(6) deposition. Yet, that is what preparing a designee on topic # 5 would require. K-C's motion for a protective order will therefore be granted.

The motion for sanctions is GRANTED in part, as set forth above; K-C's motion for leave to take further Rule 30(b)(6) depositions and its motion for a protective order are also GRANTED. In light of these and other discovery disputes in the case, it is likely that further modification of the scheduling order in this matter will be necessary. The parties should consult with each other to determine if agreement can be reached on whatever amendment may be needed. If they are unable to agree, the court will entertain a motion seeking such modification.

**SO ORDERED** this ___23rd___ day of February, 2007.

         s/ William C. Griesbach
         William C. Griesbach
         United States District Judge