UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK CORP., et al.,

        Plaintiff,

v.                                      Case No. 05-C-985

TYCO HEALTHCARE RETAIL GROUP,

        Defendant.

**ORDER**

Presently pending are two discovery motions.[1] The first, filed by Tyco, seeks an order compelling Kimberly-Clark to respond to Interrogatory No. 13. That interrogatory seeks information as to what K-C knew about feminine sanitary products produced by Paragon Trade Brands, Inc. before K-C entered into two settlement agreements with Paragon. Tyco asserts that it subsequently acquired Paragon Brands and may have relied on representations K-C made in its agreements with Paragon that Paragon's channeled napkins did not infringe K-C's patents. This reliance, it asserts, supports its equitable estoppel defense.

K-C protests that the information sought is irrelevant to any facts in issue. It asserts, in particular, that Tyco had earlier made only vague assertions of equitable estoppel and that it is now being disingenuous when it claims K-C's own statements with respect to Paragon could have prejudiced it. With respect to this objection, I note initially that K-C has very recently complained that Tyco's assertions of equitable estoppel have been lacking in support; thus, it seems at least

---

[1] According to the parties' filings, cross motions to compel (Docket Nos. 173, 174) have been rendered moot.

somewhat unusual to oppose Tyco's current efforts to further elaborate the very defense K-C had complained was unsupported.

That said, although it seems clear that the Paragon agreements have been a viable issue in discovery thus far, the relevance of Interrogatory 13 remains unclear. The interrogatory seeks information not about what K-C told anyone at Paragon or any representations it made – which could be relevant to an estoppel defense – but merely about what actions K-C took in preparing to sign the settlement agreements.

> Please describe all actions K-C took to determine what feminine sanitary products Paragon Trade Brands, Inc. manufactured and the characteristics of those products before K-C signed the agreement dated November 1, 2001 marked as KC 5661-5672 and the agreement dated July 31, 2000, marked as KC 5661-5695, and identify all persons with knowledge of, and all documents concerning, each such action.

(Docket No. 180, Ex. A at 7.) The interrogatory essentially seeks information about how K-C viewed any feminine sanitary products made by Paragon before it signed the settlement agreements, and Tyco – even in its letter response – has not made the connection between any of K-C's own internal "actions" and how those would relate to a defense of estoppel. That is, it merely protests that the Paragon agreements might be relevant (which seems clear enough) without explaining how the actual interrogatory at issue is itself relevant. Though Tyco claims any misrepresentations K-C made to Paragon might be relevant to the estoppel defense, it fails to explain how the interrogatory would lead to such information: asking K-C to "describe all actions K-C took to determine what feminine sanitary products Paragon Trade Brands, Inc. manufactured and the characteristics of those products" has nothing to do with anything K-C might have affirmatively told Paragon or anyone else. In sum, even though the Paragon agreements themselves might be relevant, the particular interrogatory at issue here cannot be expected to produce or lead to relevant information. Accordingly, the motion to compel a response to Interrogatory 13 is denied.

2

The second motion at issue is K-C's motion asking the court to review the sufficiency of Tyco's responses to K-C's requests to admit. In its motion, K-C sets forth numerous instances in which Tyco's responses to its requests to admit were based on improper objections, failures to investigate, or spurious claims of confusion or vagueness. Tyco protests first that some of the matters now brought to the court's attention were never discussed in the parties' meet-and-confer. It also argues that requests to admit are not a substitute for discovery and suggests that it should not be in the position of having to interpret K-C's complex and compound questions involving legal conclusions.

Some of K-C's complaints about Tyco's objections appear overwrought in light of the fact that in many cases Tyco evidently provided (adequate) substantive responses despite its objections. Yet some of Tyco's objections seem patently frivolous. Request 92, for example, asks Tyco to admit "that on page 3 of Paragon Trade Brands annual report, the report states . . . we made the decision to . . . discontinue operation of our feminine hygiene and adult incontinence business." (Flaherty Decl., Ex. A at 20.) Several other requests involve questions about "Paragon Trade Brands." Tyco objected to such requests on the basis that "Paragon Trade Brands" is "vague," and it now asserts that it is "an undefined term." Yet the inescapable conclusion must be that the term refers to the corporation, Paragon Trade Brands, Inc., that Tyco purchased and that is the subject of numerous other discovery requests. The company's annual report is even referenced by Bates number in the interrogatories themselves. It simply escapes all reason to claim that "Paragon Trade Brands" – whose annual report is found at KC006167-006190 – is somehow a mystifyingly vague term. Indeed, the report itself explains, on page 2, that Paragon Trade Brands "is the leading manufacturer of store brand infant disposable diapers" and engages in joint ventures involving other sanitary products. (Flaherty Decl., Ex. E.)

3

Case 1:05-cv-00985-WCG    Filed 03/05/07    Page 3 of 5    Document 190

Along the same lines, Tyco has persisted in its argument that the words "authentic" and "accurate" are somehow vague. Request 91 asks: "Please admit that the document bearing Bates Nos. KC006167-006190 is an accurate and authentic copy of the Paragon Trade Brands 2000 annual report." (*Id.*) Tyco's response is representative:"THRG objects to the terms 'Paragon Trade Brands,' 'accurate,' and 'authentic' as vague and ambiguous." Tyco now explains that Rule 36 discusses only "genuineness" – not accuracy or authenticity – but it also concedes that "If 'authentic' means something different from 'genuine,' THRG does not know what that meaning might be." (Brief at 3 fn. 3.) So it now seems that "authentic" is synonymous with "genuine," meaning that Tyco's earlier objection that the term was "vague" was incorrect.

Most of K-C's complaints, however, involve Tyco's responses to requests to admit that its products contain some of the claims construed in this court's *Markman* decision.

Request 46 is representative.

> Pursuant to the Court's October 11, 2006 Decision on Claim Construction, in which the Court construed the term of the '759 Patent "embossed channels" to mean "embossed channels," please admit that the Accused Products have "embossed channels" as that term[] is construed by the Court.

(Flaherty Aff., Ex. A at 1.) Tyco objected on the basis that the terms "accused products" and "embossed channel" are vague. It also objected because this court's decision on claim construction is "not a final judgment." (*Id.* at 2.) It now explains that "Accused Products" is vague because, as K-C has defined the term, it already incorporates the term "embossed channels." Thus, the request for admission asks Tyco to admit that products having embossed channels have embossed channels, which is obviously a tautology. Notwithstanding this cavil, however, it should have been clear that the intent of the request was not to play word games but to ascertain whether Tyco admits that the accused products contain the pertinent channels *as that term was construed by the court*. Tyco's

4

response, though a model of hedging and qualifiers, actually admits that "it manufactures sanitary napkins with embossed channels." (*Id.* at 2.) Tyco's responses to other similar requests for admission echo these objections and qualifiers, but they also seem to concede the basic points K-C was driving at. Thus, the essence of Tyco's responses to the requests for admission should be evident despite its valiant efforts to bury its admissions in objections and qualifiers.

K-C's complaints about Tyco's responses are understandable: some of Tyco's responses are almost caricatures of stonewalling and obfuscatory tactics. Yet because I believe Tyco has actually admitted the bulk of what K-C sought (though its answers are opaque), I do not believe they warrant further action in terms of supplemental responses; if anything, the responses are too lengthy as it is. Instead, though the motion will be denied, Tyco is warned that its discovery practices may be grounds for sanctions, and continued efforts to stall and muddle the issues in this lawsuit will not be well received.

In sum, the motions to compel license agreements (Docket Nos. 173, 174) are DENIED as moot. The motion to compel response to Interrogatory 13 is DENIED; the motion to determine the sufficiency of admissions is DENIED.

**SO ORDERED** this 5th day of March, 2007.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge