UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK CORP., et al.,

    Plaintiff,

v.                                                  Case No. 05-C-985

TYCO HEALTHCARE RETAIL GROUP,

    Defendant.

**ORDER**

Tyco has moved for sanctions against K-C for what it describes as the improper withholding of documents and unprepared Rule 30(b)(6) witnesses. The documents in question reveal that in May 1999, a K-C employee named Kathy Jorstad initiated testing on one of Tyco's accused products. (Docket No. 245, Ex. A.) Also listed on the testing request form is Cheryl Perkins, who Tyco portrays as a K-C employee involved in patent enforcement and related matters. Tyco believes this shows that K-C was aware of Tyco's accused products in 1999, some six years prior to the filing of this lawsuit. Thus, the documents could be used as evidence supporting Tyco's laches defense and should have been produced earlier.

K-C counters that the three pages disclosed late do not reveal testing undertaken for patent-related purposes. In other words, they do not show that K-C knew or thought Tyco's products *infringed* its patent and in fact have nothing to say at all about intellectual property matters. Instead, they were run-of-the-mill tests performed on a competitor's product to ascertain "a general baseline knowledge of competitors' products." (Docket No. 292 at 25.) K-C has provided additional underlying testing information in support of its description of the testing. (Docket Nos.

267, 271.) Review of the documents at issue reveals that they evidence K-C's testing of a competitor's product and describe the product's weight, build, capacity, adhesiveness, as well as a panoply of other parameters. The testing was not limited to the product itself – the "Equate" brand maxi – but also included information about its packaging and marketing, including the fact that it was advertised as "new!" and came in packages of 24.

K-C's explanation seems plausible. The testing does appear to be of a purely commercial sort – in other words, the documents evidence the fact that K-C was doing market research and studying the products of its competitors in some depth. There is no evidence that the testing included key parameters related to questions of infringement, nor does the testing appear at all related to intellectual property matters. On the other hand, as Tyco notes, the laches defense is not limited to plaintiffs who knowingly fail to assert clear rights: "a presumption of laches arises "'where a patentee delays bringing suit for more than six years after the date the patentee knew or *should have known* of the alleged infringer's activity.'" *Intertool, Ltd. v. Texar Corp.,* 369 F.3d 1289, 1297 (Fed. Cir. 2004) (italics added) (citation omitted).

> for laches, the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1034 (Fed. Cir. 1992). Thus, while the documents do not reveal an "aha!" moment in which K-C came to a legal conclusion that the Equate maxis infringed its patent, that is not a prerequisite to a successful laches defense. The extent of the testing and any conclusions K-C employees may have drawn could be used by Tyco to demonstrate that K-C should have known, in 1999, that Tyco was a potential infringer.

2

Given the late production of the testing data, and the lack of a particularly knowledgeable witness, Tyco has been unable to ascertain the involvement of Cheryl Perkins in the testing or to probe the testing in much detail. Perkins (who apparently is involved in K-C intellectual property matters) is listed on the testing request form as the "manager," but K-C downplays this. It asserts that Tyco could have deposed Perkins herself, but her potential involvement only came to light after discovery closed. In short, while the documents at issue do not appear to be a smoking gun in the sense that they show anything conclusively, they do lend support for Tyco's assertion that K-C *should* have known (or constructively knew) as early as 1999 that Tyco was infringing its patent. Laches involves the reasonableness of the patentee's conduct, and when a company undertakes the rather extensive testing evidenced here, the defendant should be entitled to explore the matter without relying on the plaintiff's conclusory explanations. This is especially true when it turns out, as here, that many of the responses made by plaintiffs' witnesses during depositions proved incorrect. Because Tyco has been unable to obtain significant information about how the testing information was disseminated throughout K-C, it cannot meaningfully demonstrate the constructive knowledge required for its laches defense.

The remedy Tyco seeks is a prohibition on K-C from presenting any evidence that it did not know of Tyco's infringing activity in May 1999. But such a remedy is too broad and is intertwined with the ultimate question of K-C's knowledge of infringement – there is still no evidence that K-C knew of the *infringing* nature of Tyco's activity. Tyco also asks that I vacate my order of February 23, 2007, to the extent it precluded Tyco from presenting evidence of prejudice in regard to its laches defense. But here, too, Tyco fails to tie the relief it seeks with the specific offense it claims warrants sanctions. Instead, because Tyco has not had a fair opportunity to explore the contours of

3

how K-C used the testing data, I will allow Tyco to take further discovery on the matter (whether a deposition of Perkins or someone else) and, if it desires, to file a brief supplement to its summary judgment motion on the import of the documents at issue. Late disclosure of these documents should not limit Tyco's ability to make use of the testing issue in its laches defense, and allowing additional discovery may shed light on the evidence without placing undue restrictions on K-C. K-C is directed to make available a witness who is knowledgeable about the nature of the testing, who was involved in it, and how the testing results were used and disseminated throughout K-C.

Tyco also seeks sanctions because K-C's Rule 30(b)(6) witnesses were unprepared. It asserts that one of the witnesses could not reveal anything concrete about the prosecution history of the patent in question. It also states that K-C changed its story regarding whether any executives were aware of sanitary products manufactured by Paragon. On the latter point, Tyco believes it is unfair for K-C to have consistently asserted the irrelevance of the Paragon information throughout this lawsuit (*see* Order, March 5, 2007, Docket No. 190), only to later cite, as though it were relevant, Tyco's lack of evidence on that issue. Yet I did not read K-C as arguing that such information was wholly irrelevant; instead, what was irrelevant was the information sought in a particular interrogatory. In any event, the examples of unpreparedness cited by Tyco do not persuade me that K-C's witnesses were inept or lacking in preparation for the topics noticed. Moreover, its claims that K-C's witnesses prejudiced their case are somewhat difficult to follow. Accordingly, I find no basis to impose sanctions based on K-C's 30(b)(6) witnesses.

In sum, Tyco's motion for sanctions (docket # 245) will be **GRANTED IN PART**: it will be allowed to take an additional deposition or conduct other suitable discovery (at Tyco's option) of a knowledgeable K-C witness, as described herein. The discovery should be completed as soon

4

as possible and in time for Tyco to file a supplemental brief in support of its motion for summary judgment by July 1, 2007. K-C may file a brief response by July 15, 2007. The motion for sanctions is **DENIED** in all other respects, and the motion for a hearing (docket #272) is also **DENIED**.

      **SO ORDERED** this   17th   day of May, 2007.

                        s/ William C. Griesbach
                        William C. Griesbach
                        United States District Judge

5

Case 1:05-cv-00985-WCG    Filed 05/17/07    Page 5 of 5    Document 342