UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK CORP., et al.,

        Plaintiff,

v.                                                      Case No. 05-C-985

TYCO HEALTHCARE RETAIL GROUP,

        Defendant.

**ORDER**

At issue presently are a motion to compel and two motions for protective orders. (A fourth motion, for sanctions, is also pending.) First, K-C seeks an order precluding Tyco from taking further deposition testimony from a witness, Thomas Mielke, regarding efforts K-C undertook to investigate any products made by Paragon Trade Brands. Based on a late-disclosed document from 1998, K-C agreed to allow Tyco an additional deposition of Mielke. The deposition was to be limited to three hours and could involve only the document in question and matters related to that document. When Tyco strayed from questioning Mielke about the document, K-C ended the deposition, and this motion ensued.

This dispute, like many others in this case, involves Tyco's estoppel defense. Tyco is claiming that certain settlement agreements entered into between K-C and Paragon manifested K-C's position that none of Paragon's products infringed on K-C's patents. When Tyco bought Paragon, it claims to have relied on that knowledge to its detriment. Now, in deposing Mr. Mielke (and in seeking a response to Interrogatory No. 13), Tyco seeks information about what K-C knew about

the products – in particular, sanitary napkins – Paragon was producing at the time they entered into the settlement agreement. As the Federal Circuit has found:

> An [equitable] estoppel case ... has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1041 (Fed. Cir. 1992) (citation omitted).

In persisting with its quest to uncover what was going on in the minds and offices of K-C during the period in question, Tyco is not focusing on its own reliance or prejudice (the second and third elements of estoppel). Nor is it focusing on what K-C actually said (the "something" that was communicated, which is part of the first element). Instead of delving into these objective factors, Tyco seeks to uncover what K-C's own *subjective* knowledge was as of the time it made the representations to Paragon that Paragon's products did not infringe.

Although not overly emphasized by the case law (or Tyco, for that matter), it seems clear that there is an element of subjectivity inherent in the estoppel claim.[1] As quoted earlier, the first element requires that the actor or speaker "usually must have knowledge of the true facts." *Id.* The Federal Circuit further elaborates that "[t]he alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time." *Id.* at 1042. In other words, the law generally does not allow "estoppel by accident," whereby a patentee can be held to statements he made in ignorance of the true facts.

---

[1]That this element is not emphasized is perhaps unsurprising. It will presumably be the rare case when a patentee will offhandedly issue a release or otherwise give assurances of noninfringement without even knowing what products the infringer produced.

2

Tyco's attempts to depose Mielke go to the heart of this subjective component. The question pending when K-C cancelled the deposition asked whether he did any type of investigation into what kinds of products Paragon produced before K-C signed the settlement agreement. Throughout, Mielke had protested that he did not know that Paragon even produced sanitary napkins. If true, K-C would be able to claim that no one at K-C even knew about Paragon's sanitary napkins and that they were not deemed part of the settlement agreement. But the recently produced document at issue here suggests that Mielke, the recipient of the document, would have known Paragon produced sanitary napkins had he simply read the document. (Flaherty Decl., Ex. 3.) The document is a June 5, 1998 fax of a licensing agreement between Proctor & Gamble and Paragon, in which Proctor & Gamble granted a license to Paragon to manufacture and sell sanitary napkins. Although Mielke may argue that he either forgot about this document or never received it, its existence is enough to generate some question as to his heretofore consistent position that he had no knowledge that Paragon produced sanitary napkins. And because that subject matter is fair game in an estoppel case, I conclude that Tyco should be allowed to explore it in a further deposition of Mielke. Accordingly, the motion for a protective order will be denied.

Similarly, Tyco's renewed motion to compel a response to Interrogatory No. 13 will be granted. The interrogatory states:

> Please describe all actions K-C took to determine what feminine sanitary products Paragon Trade Brands, Inc. manufactured and the characteristics of those products before K-C signed the agreement dated November 1, 2001 marked as KC 5661-5672 and the agreement dated July 31, 2000, marked as KC 5661-5695, and identify all persons with knowledge of, and all documents concerning, each such action.

Although the relevance of this line of questioning had not previously been elaborated at any length, I now conclude for the reasons given above that such a question is within the bounds of

relevance for Tyco's estoppel defense. As long as K-C claims it was unaware that Paragon even produced napkins, the existence of documentary evidence to the contrary precludes K-C from withholding other evidence as to what efforts it might have undertaken to determine the nature of Paragon's products. The motion will therefore be granted.

Finally, Tyco moves for a protective order from a document for which it asserts the attorney-client privilege. In a January 26 order, I concluded that Tyco had generally waived the attorney-client privilege because it had used advice of counsel – in particular, a 1999 letter from the Fish & Richardson law firm – as a defense to willful infringement. Tyco asserts that the document K-C now seeks is outside the scope of that waiver and should be protected as privileged.

The document at issue is a 1997 communication from a law firm to its client, Paragon. Because it references one of the patents-in-suit, it is minimally responsive to K-C's discovery request. Nevertheless, the document concerns a product that Tyco claims is neither an accused product nor substantially similar to an accused product. And because the product was a Paragon (rather than Tyco) product, Tyco believes it does not fall within the scope of its privilege waiver. Tyco further argues that a 1997 letter to a company it did not even own at the time cannot speak to its willfulness either way because there is no evidence that Tyco ever even saw the letter until very recently.

Tyco has stated (via its motion and a letter response) that the document in question does not concern any of the products alleged to infringe here.[2] Moreover, the document does not discuss the

---

[2]K-C does not argue that the privilege is inapplicable. Yet it is somewhat unusual for Tyco to be asserting a claim of attorney-client privilege as to a document it suggests it never even saw. If the privilege is meant to protect confidential attorney-client communications, it makes little sense to enforce that privilege (and withhold otherwise responsive information from the other party) when the party asserting it claims the communication was never even received. Although the privilege may

4

enforceability or validity of any of the patents – it merely refers to one of the patents. *Echostar* holds that privilege is waived only when the communication "concern[s] whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304. Because Tyco has assured us that the document does not discuss validity or enforceability of the patents-in-suit, nor infringement of any of the accused products, I conclude that it need not be produced. Accordingly, the motion for a protective order will be granted.

Finally, it appears the parties have produced tens of thousands of pages of discovery *after* the discovery cut-off date, making something of a mockery of the scheduling order and any motions that were filed based on an incomplete record. I have already re-opened the briefing on the laches defense, and it now appears obvious that the estoppel argument may require further enquiry. Accordingly, Tyco may file a short amended brief in support of its estoppel argument not later than September 7, 2007; K-C may file a short response by September 21.

For the reasons given above, Tyco's motion to compel a response to Interrogatory No. 13 [412] is **GRANTED**; Tyco's motion for a protective order [423] is **GRANTED**; K-C's motion for a protective order [414] is **DENIED**.

**SO ORDERED** this 1st day of August, 2007.

  s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

survive corporate ownership changes, when the legal advice at issue was given to a predecessor in interest some ten years ago, one wonders whether the sacred trust of the attorney's advice would truly be violated if K-C were allowed to see the document.

5